60 F.3d 833
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Pamela K. LANE, Plaintiff-Appellant,
v.
J.C. PENNEY LIFE INSURANCE COMPANY, a Vermont corporation,
Defendant-Appellee.
 No. 93-36099.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 5, 1995.
Decided July 7, 1995.
 
 1
 Before CANBY and REINHARDT, Circuit Judges, and LEGGE,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 The parties are familiar with the facts of this case; we will not recite them here. Pamela Lane appeals the district court's grant of summary judgment in favor of JC Penney Life Insurance Company, the defendant in her action to collect the proceeds of an insurance policy. The district court ruled that Lane's recovery was precluded by the exclusion in Penney's policy of coverage for injuries or death incurred while the insured was intoxicated. We reverse.
 
 
 4
 We review de novo the district court's grant of summary judgment. Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994). Viewing the evidence in the light most favorable to Lane, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. See Id.
 
 
 5
 I. The Existence of an Oral Contract for Insurance
 
 
 6
 Lane argues that the entire contract for insurance between her husband and Penney was embodied in those items discussed in the sales call and that, taking the evidence in the light most favorable to her, the court must infer that the caller covered the sales portion of the script, but not the verification portion. Thus she asserts that an oral contract, with no exclusions or limitations on coverage, existed between her husband and Penney.[1] Her assertion is incorrect. Enforceable contracts for insurance may be made orally, but they must be established by clear and convincing evidence. 2 Couch on Insurance Sec. 14.21 (2d ed. 1984). The proponent of the contract must show that there was a meeting of the minds as to all material or essential terms. Weil & Assoc's v. Urban Renewal Agency, 479 P.2d 875, 883 (Kan.1971). Essential terms for a contract of insurance must include any limitations on coverage, at a minimum. Without that additional information, the terms of the propounded oral contract are, as Penney urges in its brief, "too indefinite to be enforceable." The district court was correct in finding that no oral contract was formed.
 
 
 7
 II. Reformation of the Intoxication Exclusion Clause
 
 
 8
 The Illinois legislature has imposed, through its Insurance Code, several public policy-based requirements upon insurance policies either issued or sold in Illinois.[2] Among them is the requirement of section 357.25 that any intoxication exclusion written into a policy must use precise, statutorily provided language indicating that the insured's intoxication must cause the loss in order to trigger the exclusion.[3] If section 357.25 were to apply in this case, then Penney's "status" exclusion, which would deny coverage to an insured merely upon proof of his intoxication and without regard to the cause of his loss, could not stand as written.
 
 
 9
 The legislature, however, has also exempted group insurance policies, unless otherwise provided, from section 357.25 and certain other public policy-based requirements.[4] Penney argues that its policy is a "group" insurance policy, and is therefore exempt from section 357.25's causation requirement. While we find that Penney's policy is properly classified as a group policy, that classification ultimately does not save its intoxication "status" exclusion, as written, from reformation.
 
 
 10
 A. Classification of Penney Policy as Group Policy
 
 
 11
 Section 230.1 of the Insurance Code initially purports to define group policies as only those offered to groups described in the statute. Holders of the same credit card are not among the groups described. Section 230.2, however, allows group insurance policies to be offered to groups other than those defined in section 230.1, when the state Director of Insurance approves such policies pursuant to criteria set forth in the section.
 
 
 12
 In the present case, the Director approved Penney's proposed group master policy after being apprised of the group's potential membership. Because the parties allege no facts to the contrary, we presume that the Director properly considered the criteria of section 230.2 in reaching her decision to approve the application. The district court therefore correctly determined that the Penney policy was a valid group policy.
 
 B. The Effect of Section 367(2)
 
 13
 The classification of Penney's policy as a group policy, however, does not save its intoxication "status" exclusion in the end. As we have already pointed out, sections 356a to 359a are stated to be inapplicable to group policies like Penney's "unless otherwise specifically provided " by the legislature. 215 ILCS 5/362a (emphasis added). The Illinois legislature has otherwise specifically provided. Section 367(2) of the Code reinserts the substance of certain public policy-driven requirements for group insurance policies.[5] That includes section 357.25's requirement, at least in substance, that an insured's intoxication cause the loss before any intoxication exclusion is triggered. We have no difficulty concluding that Penney's status intoxication exclusion differs in substance from the causation intoxication exclusion prescribed by section 357.25.
 
 
 14
 We conclude that the policy must be reformed to include a causation requirement in its intoxication exclusion. The district court read the policy not to require causation, and its judgment was based upon that reading. The judgment accordingly must be reversed. The district court did not reach the question of causation, and we decline Penney's invitation, extended during oral argument, to rule on that factual issue in the first instance.
 
 IV. Other Issues Raised on Appeal
 
 15
 Lane argues that the district court erred in relying on the hospital report showing different blood alcohol content percentages and carrying a printout date nearly four months after Russell Lane's death. Lane also complains of the court's decision to cut off discovery after twelve months. We find no merit in either of these assertions; the district court acted well within its discretion in deciding both issues.
 
 
 16
 Finally, should the district court upon remand conclude that Russell Lane was covered under the policy, Lane shall recover no more than $40,000, the benefit amount listed for "Other Covered Accidental Deaths." Because no unlimited oral contract exists, the terms on the Certificate of Insurance control the amount of benefits available, and those terms limit the automobile-related coverage of $100,000 to accidents involving four-wheeled vehicles.
 
 REVERSED AND REMANDED.[6]
 
 
 *
 The Honorable Charles A. Legge, United States District Judge for the Northern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 The parties apparently agree that, because Mr. Lane resided in Kansas when he purchased the policy, and because he died in Kansas, Kansas law governs this question
 
 
 [2]
 The parties do not dispute that, because the policy was issued in Illinois, Illinois law governs this question. Lane argues that, if Illinois law is construed as she urges, it also requires compliance with Kansas law, which she contends is favorable to her position. Because Lane prevails in this appeal in any event if Illinois law is construed as she urges, it is unnecessary for us to address her point of Kansas law
 
 
 [3]
 215 ILCS 5/357.25 provides:
 Sec. 357.25. "INTOXICANTS AND NARCOTICS: The company shall not be liable for any loss sustained or contracted in consequence of the insured's being intoxicated or under the influence of any narcotic unless administered on the advice of a physician."
 (Emphasis added). The above language is required in any intoxication exclusion by section 357.14, which provides that "no such policy ... shall contain provisions respecting the matters set forth in sections 357.15 through 357.25 unless such provisions are in the words in which the same appear in this article...." (Emphasis added).
 
 
 [4]
 Section 362(a) of the Insurance Code states that "[t]he provisions of section 356a to 359a [inclusive] shall not apply to or affect ... (3) any group policy of insurance (unless otherwise specifically provided ).... (Emphasis added)
 
 
 [5]
 The section provides:
 No policy of group accident and health insurance may be issued or delivered in this state unless ... it contains in substance those provisions contained in Sections 357.1 through 357.30 as may be applicable to group accident and health insurance....
 
 
 [251]
 ILCS 5/367(2) (emphasis added). Penney's was an accidental death and dismemberment policy; the provision therefore applies
 We reject any suggestion that section 367(2) reinserts only those sections already expressly "applicable to group accident and health insurance." The reinsertion provision of section 367(2) would have no useful purpose or effect if it were so limited. We construe "applicable" in section 367(2) as meaning "able to be applied."
 
 
 [6]
 Penney's Motion for Leave to File Memorandum on Issues Raised at Oral Argument is denied